## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JEFFREY SWEET,

        Plaintiff,

  v.

CITY OF HARTFORD, JAMES C. ROVELLA, GARRETT FRANCHER, GREGORY CORVINO, CHRISTOPHER REEDER, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6,

        Defendants.

Civil Action No.
3:15-CV-00553 (CSH)

**MAY 24, 2018**

### RULING ON SUMMARY JUDGMENT MOTIONS

**HAIGHT, Senior District Judge:**

Plaintiff Jeffrey Sweet brings this action pursuant to 42 U.S.C. § 1983 against the City of Hartford, Police Chief James Rovella, Officer Garrett Fancher,[1] Officer Gregory Corvino, Officer Christopher Reeder, and John Does #1-6, alleging violations of his Fourth Amendment rights. Plaintiff also alleges that the Defendants committed several state law torts, and asserts claims under state law for municipal liability.

Plaintiff's claims arise from an incident that occurred on October 13, 2013, in Hartford, Connecticut. Plaintiff was forcibly removed from his vehicle by the police and arrested on several charges.

---

[1] The docket and caption reflect an incorrect spelling of this Defendant's name. The Court will adopt the correct spelling, Fancher, and directs the Clerk to amend the caption accordingly.

As a result of this incident, Plaintiff asserts federal constitutional claims against the officers Fancher, Corvino, and Reeder (collectively, the "Officer Defendants") under section 1983 for unreasonable seizure and for failure to intervene. The Complaint also alleges claims under the common law for assault and battery, intentional infliction of emotional distress, false arrest, recklessness, negligence, and negligent infliction of emotional distress. Additional claims are asserted against Chief Rovella for failure to supervise, and for municipal liability against the City of Hartford ("City").

The Officer Defendants, Chief Rovella, and the City have moved for summary judgment on Plaintiff's claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions have been opposed, and are ripe for consideration. This Ruling resolves them.

## I.  STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must "demonstrate the absence of any material factual issue genuinely in dispute" to be entitled to summary judgment. *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319-20 (2d Cir. 1975)) (quotation marks omitted). All inferences and ambiguities must be viewed in the light most favorable to the nonmoving party. *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015).

"In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by [Rule 56], the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a

genuine issue of material fact to be tried." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). The non-moving party cannot "defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Id.* (citations omitted). In other words, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013) (citing *Anderson*, 477 U.S. at 248). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

## II. FACTUAL BACKGROUND

The following undisputed or indisputable facts are derived from the parties' submissions pursuant to Local Rule 56(a); the uncontroverted deposition testimony; and the affidavits and exhibits attached to the parties' submissions. All reasonable inferences have been drawn in Plaintiff's favor.

During the time relevant to this action, Plaintiff was a resident of the City of Hartford, a municipality of the State of Connecticut. Defendants Fancher, Corvino, and Reeder were employed

as police officers by the City. James Rovella was the City Chief of Police. *See* Plaintiff's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment, Doc. 68-1 ¶¶1-6.

On October 13, 2013, at around 7:00 p.m., Plaintiff met friends at a sports bar in downtown Hartford. *Id.* ¶8. After dinner, at approximately 9:30 p.m., he proceeded to drive home alone. *Id.* ¶10; April 5, 2017, Deposition Testimony of Jeffrey Sweet, Doc. 51-1 at 64. Plaintiff drove west on Farmington Avenue. Doc. 68-1 ¶11. Before turning right on Sigourney Street, Plaintiff noticed lights in his rearview mirror; he did not see them again after making the turn. Doc. 51-1 at 67. He then made a left turn on Niles Street, a left onto Woodland, and a left into the parking lot of his apartment building at 30 Woodland Street. Doc. 68-1 ¶11.

As Plaintiff was traveling home, Officers Fancher, Corvino and Reeder were together in a police vehicle, driving southbound on Woodland Street. *Id.* ¶¶28-9. Corvino was operating the vehicle. *Id.* ¶33. A dispatch came over the radio, indicating that an officer in the area had attempted to stop a silver or grey SUV last seen traveling westbound on Niles Street. August 27, 2017, Deposition of Greg C. Corvino, Doc. 51-1 at 178. Officer Corvino then observed a vehicle that matched that description, turning left from Niles Street onto Woodland Street. *Id.* at 175-76. Corvino attempted to catch up with the vehicle. *Id.* at 180. He did not operate the police car's lights or sirens. *Id.* Corvino followed Plaintiff's vehicle to 30 Woodland Street, pulling up and stopping behind Plaintiff's parked car. Doc. 68-1 ¶33.

After parking his car in a spot at 30 Woodland Street, Plaintiff saw lights and people coming towards his car. Doc. 51-1 at 70. Fancher and Corvino approached the front driver's side of Plaintiff's vehicle. Doc. 51-1 at 78. Corvino had his service weapon drawn. *Id.* Reeder approached and opened the door on the passenger's side of Plaintiff's vehicle. Doc. 68-1 ¶40. While Plaintiff was still sitting

in the driver's seat, Fancher punched him in the face. *Id.* ¶71-2; Police Report, Doc. 51-1 at 243. Plaintiff was then pulled from his vehicle by the officers and was brought to the ground. Doc. 51-1 at 72. He was handcuffed and arrested. *Id.* ¶17.

Plaintiff claims to have suffered injuries as a result of the incident. Doc. 51-1 at 84. Plaintiff did not request medical attention at the time of his arrest. Doc. 68-1 ¶19. This arrest was the only time that Plaintiff had been arrested by the Hartford police. *Id.* ¶23.

The parties' account of the events differs in several respects, not recounted above. The parties dispute whether Plaintiff was operating the car recklessly prior to bringing the vehicle to a stop in the parking lot of 30 Woodland Street. Plaintiff relies on his own deposition testimony and his affidavit to rebut the Officer Defendants' testimony and the police report. The parties also dispute whether the officers said anything to Plaintiff upon exiting their vehicle in the parking lot, whether Plaintiff resisted the officers, whether Plaintiff was subjected to any force beyond the blow to his face, and the extent of his injuries. Finally, the parties dispute whether Plaintiff was aware that he was interacting with the police – as opposed to civilians – prior to being pulled from the vehicle.

### III. DISCUSSION

Pending before the Court are two motions for summary judgment: one on behalf of the Officer Defendants, and one on behalf of the City and Chief Rovella.

As an initial matter, Plaintiff concedes that he cannot prevail on several counts, and therefore "does not object to summary judgment" on the claims alleged against Chief Rovella for failure to supervise, and on the claim alleged against the Officer Defendants for false arrest. Accordingly, summary judgment will be granted on those claims. Further, Plaintiff recognizes that the City cannot be liable for punitive damages; therefore, Defendant City's motion for summary judgment on

Plaintiff's prayer for punitive damages will be granted. I will now consider the other dispositive motions.

## A.    Officers' Motion for Summary Judgment [Doc. 51]

### 1.    <u>Excessive Force</u>[2]

Plaintiff alleges that the Officer Defendants used an unreasonable and excessive amount of force during the course of his arrest on October 13, 2013. The Officer Defendants move for summary judgment on Plaintiff's section 1983 claim of excessive force on the grounds of qualified immunity. In opposing Defendants' motion, Plaintiff argues that a material issue of fact exists as to whether the officers' use of force was reasonable. Plaintiff contends that the parties' conflicting versions of the incident warrant denial of the motion.

Section 1983 provides a private right of action for monetary damages from government officials, who, acting "under color" of law, have violated an individual's federal statutory rights, or constitutional rights and privileges. 42 U.S.C. § 1983; *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Qualified immunity operates to shield government officials from such liability, where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Thus, a police officer may be entitled to qualified immunity if: "(1) his conduct does not

---

[2] Plaintiff's Complaint labels Count I as a claim of "unreasonable seizure" and seeks recovery pursuant to section 1983. Doc. 1. "A complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)).The facts alleged in Plaintiff's Complaint lead the Court – and Defendants – to read Count I as alleging a claim of excessive force, in violation of Plaintiff's Fourth Amendment prohibition against unreasonable seizures.

violate a clearly established constitutional right, or (2) it was objectively reasonable for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (quotation marks and citation omitted). "Because qualified immunity affords immunity from suit rather than a mere defense to liability, it is usually invoked before trial. Where, however, immunity depends on disputed facts, the availability of that shield may be determinable only after trial." *O'Hara v. City of New York*, 570 F. App'x 21, 23 (2d Cir. 2014) (quotation marks, citation, and emphasis omitted).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Where a claim of excessive force "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quotation marks and citation omitted); *see also Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1547 (2017) ("An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances."). "It is well established that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (quotation marks and citation omitted).

> This objective standard allows for split-second judgments—circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a given situation. It allows even for a certain degree of mistake. If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.

*Santana v. City of Hartford*, 283 F. Supp. 2d 720, 727 (D. Conn. 2003) (quotation marks and citations omitted).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. 396 (quotation marks and citation omitted). "In conducting that balancing, [the Court is] guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396); *see also Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) ("The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer."). "If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987).

The Court agrees with Defendants' contention that Reeder is entitled to summary judgment on Plaintiff's excessive force claim because he had no physical contact with Plaintiff. The undisputed evidence establishes that Reeder did not subject Plaintiff to force, let alone force that can be deemed excessive. The surveillance video of the incident unequivocally shows that Reeder did not come into contact with Plaintiff during the incident. On the video, Reeder is seen exiting the front passenger door of the police vehicle, approaching the passenger's side of Plaintiff's vehicle, and opening the door. As Plaintiff emerges from the driver's side of his car, he is surrounded by other officers and is brought to the ground. During this time, Reeder can be seen standing apart, at a distance of several feet. Plaintiff offers no admissible evidence to refute this account, or evidence that identifies Reeder

as one of the officers who "manhandled" or punched him after he was removed from his vehicle.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation marks and citation omitted); *see also McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (same). The indisputable evidence before this Court does not support a reasonable conclusion that Reeder participated in the use of force against Plaintiff. Accordingly, Reeder is entitled to summary judgment on the excessive force claim.

However, the same conclusion cannot be reached with regard to Plaintiff's claims against Fancher and Corvino. Plaintiff contends that without provocation or justification, he was subjected to a blow to his face by Fancher, was dragged out of his vehicle, and was manhandled and punched repeatedly. Defendants contend that the force used by Corvino and Fancher was reasonable, given the fact that Plaintiff had been driving erratically; that he ignored commands to surrender; and that he actively resisted arrest by struggling against the officers and by clutching his seat belt to avoid being removed from the car. But by both his testimony and his affidavit, Plaintiff plainly disputes Defendants' account that he had been non-compliant and resisting arrest. *See* Doc. 51-1 at 254-6; *see also* Doc. 68-9 ¶¶9,10. Plaintiff also denies that he was driving recklessly prior to his interactions with the police, and states that he was unaware that the police were following his vehicle. *See* Doc. 68-9 ¶¶4,7. These Defendants indisputably had *some* level of physical contact with Plaintiff. The contrasting accounts of both Plaintiff's and Defendants' conduct present genuine factual issues that preclude determination of the objective reasonableness of the force used by these officers. A

reasonable jury could find that the use of force was objectively unreasonable.[3]

The Second Circuit has stated that "at least in some excessive force cases the various parts of the [qualified immunity] analysis ultimately converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (citations omitted); *see also Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) ("Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." (quotation marks and citation omitted)).

Crediting Plaintiff's account that he was lawfully operating his vehicle in a responsible manner, that the officers did not identify themselves or issue any commands, and that he did not resist in any way, the use of force here would be objectively unreasonable. *See O'Hara*, 570 F. App'x at 24 (affirming the denial of qualified immunity on an excessive force claim where it was alleged that "unarmed, non-menacing" plaintiff was punched by an officer in the face without provocation and then punched repeatedly after he fell to the ground); *see also Graham v. City of New York*, 928 F. Supp. 2d 610, 619 (E.D.N.Y. 2013) (finding that the forcible removal of a nonviolent individual

---

[3] Although the Supreme Court has made it clear that the Court may exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), there is no question that the right at issue in this case – to be free from excessive force – was clearly established at the time of the incident.

from a vehicle for suspected traffic violations can constitute an unreasonable use of force (collecting cases)). Although Defendants purport to rely on "the facts viewed in the light most favorable to Plaintiff," Doc. 51-1 at 1 n.1, the argument advanced as to their entitlement to qualified immunity is founded on the contention that Plaintiff was struck "to obtain compliance" and that "Plaintiff ignored commands to surrender and struggled when Officer Fancher attempted to remove him from the vehicle, by holding on to the driver's side seat belt." *Id.* at 12. This is hardly Plaintiff's version of the events; Plaintiff both testified and affirmed that he had not heard any commands from the police, nor had he resisted the officers. These assertions, made under oath, clearly create a genuine dispute.

Viewing the facts in a manner most favorable to Plaintiff, no reasonable officer would believe that Fancher and Corvino were justified in punching this law-abiding individual in the face, forcibly pulling him from his car, and then subjecting him to an additional assault in bringing him to the ground to be restrained. For this reason, and because the Court "cannot grant summary judgment based on its assessment of the credibility of the evidence presented," *Rogoz*, 796 F.3d at 246 (quotation marks and citation omitted), Defendants are not entitled to summary judgment on the basis of qualified immunity. Accordingly, viewing the facts in the light most favorable to Plaintiff, and acknowledging that there are genuine issues of fact in dispute, Defendants' motion for summary judgment on the basis of qualified immunity with respect to Plaintiff's Fourth Amendment excessive force claim against Fancher and Corvino will be denied.

2. **Failure to Intervene**

Plaintiff also asserts a claim for failure to intervene against each of the Officer Defendants. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose

constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (collecting cases); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (collecting cases)). "Liability attaches on the theory that the officer, by failing to intervene, becomes a tacit collaborator in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quotation marks omitted) (citing *O'Neill*, 839 F.2d at 11-12).

Liability for failure to intervene "may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted), *aff'd sub nom.*, *Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012)."Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557 (citation omitted).

Here, the Officer Defendants argue that as a matter of law, the circumstances did not present sufficient time for any of the officers to intervene to prevent harm to Plaintiff. In response, Plaintiff submits the surveillance video of the incident as evidence that each officer had a realistic opportunity to intervene, stating that there was "at least a six second interval before Fancher opened the driver's side door to punch the Plaintiff in the face." Doc. 68 at 8.

In declining to endorse a bright-line rule regarding the amount of time in which one could

reasonably intervene in an assault, the Second Circuit has stated:

> Failure-to-intervene claims can arise out of a limitless variety of factual circumstances. In each case, the question whether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations. Among these considerations, of course, the assault's duration will always be relevant and will frequently assume great importance. But this does not permit distillation of a hard-and-fast temporal cutoff . . . . Instead, courts must evaluate each case on its own facts, keeping in mind that circumstances other than an assault's duration might bear significantly on an officer's ability to stop it from happening. The essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a tacit collaborator in the unlawful conduct of another.

*Figueroa*, 825 F.3d at 107–08 (quotation marks and citations omitted).

Taking into account all of the circumstances and viewing them in a light most favorable to Plaintiff, the Court cannot say as a matter of law that there was no opportunity for the officers to intercede in the use of force. The surveillance video of the incident establishes that approximately twenty seconds elapsed between the officers' first contact with Plaintiff and the time he was brought to the ground. It is possible that a jury, crediting Plaintiff's version of the events, may find that Corvino or Fancher had a small opportunity to prevent each others' use of force. Further, a reasonable jury could find that Reeder failed to intervene after the initial blow, when Plaintiff was on the ground, allegedly being subjected to additional force from Corvino and Fancher, and other unidentified officers.

Accordingly, the motion for summary judgment on the failure to intervene claims will be denied.

### 3.    **State Law Claims**

#### a.    Assault and Battery

Under Connecticut law, assault is "defined as the intentional causing of imminent apprehension of harmful or offensive contact with another." *Germano v. Dzurenda*, No. 09-CV-1316(SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011) (quotation marks omitted) (quoting *Dewitt v. John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594 (1985)). "[A]n actor is subject to liability for battery [under Connecticut law] if (a) he acts intending to cause harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Germano*, 2011 WL 1214435, at *22 (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975))."Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of [section 1983] excessive force and state law assault and battery claims are substantially identical." *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (quotation marks and citation omitted).

Here, the Court has concluded that there are unresolved issues of fact as to whether the force used by Corvino and Fancher was objectively reasonable. The Court has also determined that there is no evidence that Reeder applied any amount of force to Plaintiff. Accordingly, the Defendants' motion for summary judgment as to the claim of assault and battery with respect to Fancher and Corvino will be denied, but will be granted with respect to Reeder.

#### b.    Intentional Infliction of Emotional Distress

In Connecticut, to assert a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that

the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Miner v. Town of Cheshire*, 126 F. Supp.2d 184, 194 (D. Conn. 2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)); *see also DeLaurentis v. New Haven*, 220 Conn. 225, 266-67 (1991). Liability for intentional infliction of emotional distress has been found only where the conduct in question is "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner*, 126 F. Supp.2d at 194.

Defendants contend that they are entitled to summary judgment on this claim, as the conduct of each officer could not, as a matter of law, be described as "extreme and outrageous." The Court disagrees. Crediting Plaintiff's version of the events, without identifying himself as a police officer, Corvino approached Plaintiff's parked car with his firearm drawn, and attempted to forcibly remove Plaintiff from his vehicle. Fancher then approached Plaintiff and punched him in the head, without any provocation. Fancher and Corvino, along with other unidentified officers, then proceeded to yank Plaintiff from his car, and hit him while he was on the ground. Reeder watched the events unfold and failed to intervene. A reasonable jury could find that such conduct was extreme and outrageous.

Further, summary judgment on a claim for intentional infliction of emotional distress is often denied where the court has already determined that there is a disputed issue of fact surrounding the conduct associated with the claim. *See*, *e.g.*, *Zadrowski v. Town of Plainville*, No. 3:09-CV-1367(DJS), 2013 WL 5435491, at *13 (D. Conn. Sept. 30, 2013) (denying summary judgment with respect to a claim for intentional infliction of emotional distress where, *inter alia*, the court had found that there were material issues of fact as to whether the officers' use of force was

reasonable (collecting cases)); *Betancourt v. Slavin*, 676 F. Supp. 2d 71, 81 (D. Conn. 2009) (same, noting that "[b]ecause summary judgment was denied on plaintiff's excessive force claim, the Court cannot grant summary judgment on the intentional infliction of emotional distress claim"); *Frappier v. City of Waterbury*, No. 3:07-CV-1457(WWE), 2008 WL 4980362, at *3 (D. Conn. Nov. 20, 2008) (same); *Clark v. Dowty*, No. 3:05-CV-1345(WWE), 2007 WL 2022045, at *14 (D. Conn. July 9, 2007) (same). *See also McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir. 1999) (finding that the existence of genuine issues of material fact precluded summary judgment on the plaintiff's claim for intentional infliction of emotional distress alleged under Connecticut law).

Accordingly, Defendants' motion for summary judgment on the intentional infliction of emotional distress claim will be denied.

d. <u>Negligent Infliction of Emotional Distress and Negligence</u>

Defendants seek summary judgment on Plaintiff's negligence-based tort claims, on two grounds. First, Defendants argue, because the physical contact between Plaintiff and Corvino and Fancher was minimal, and constitutionally permissible, a claim for negligent infliction of emotional distress cannot lie. Second, Defendants contend that they are entitled to governmental immunity with respect to the negligence-based claims against them, pursuant to Conn. Gen. Stat. § 52-557n, as the acts complained of required the exercise of discretion.

To state a claim for negligent infliction of emotional distress in Connecticut, a plaintiff must show that: "(1) The defendant's conduct created an unreasonable risk of causing the plaintiff's emotional distress; (2) The plaintiff's distress was foreseeable; (3) The emotional distress was severe enough that it might result in illness or bodily harm; and (4) The defendant's conduct was the cause of the plaintiff's distress." *Doe*, 453 F. Supp. 2d at 554.

The Court has already concluded that material issues of fact prevent summary judgment on Plaintiff's excessive force and failure to intervene claims; Plaintiff's negligent infliction of emotional distress claim is based on the same conduct. Thus, Defendants' first argument falls short. However, Defendants raise an immunity defense, which the Court will now examine.

Conn. Gen. Stat. § 52-557n provides:

(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

Conn. Gen. Stat. § 52-557n(a).

Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. In contrast, ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion.

*Spears v. Garcia*, 263 Conn. 22, 36 (2003) (citations omitted). Thus, pursuant to Connecticut law, a municipal employee may be entitled to immunity for negligence in the performance of official duties, if the act complained of was discretionary, rather than ministerial, in nature. And "[i]t is well-settled that the acts or omissions of police officers in the exercise of their duties are discretionary in nature." *Gothberg v. Town of Plainville*, 148 F. Supp. 3d 168, 189 (D. Conn. 2015)

(citation omitted).

However, three exceptions exist to discretionary act immunity: (1) "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm"; (2) "where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws"; and (3) "where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." *Id.* (quotation marks and citation omitted). Here, Plaintiff appears to acknowledge that Defendants' acts were discretionary in nature, but argues that the first exception – the "imminent harm" exception – applies in these circumstances.

Courts in this District have routinely applied the imminent harm exception in the context of a case in which excessive force is alleged. *See, e.g.*, *Conroy v. Caron*, 275 F. Supp. 3d 328 (D. Conn. 2017) (in a case alleging excessive force, denying summary judgment on immunity grounds based on the existence of genuine issues of fact); *Bussolari v. City of Hartford*, No. 3:14-CV-00149(JAM), 2016 WL 4272419, at *4 (D. Conn. Aug. 12, 2016) (same); *Carey v. Maloney*, 480 F. Supp. 2d 548, 560 (D. Conn. 2007) (same); *Galindez v. Miller*, 285 F. Supp. 2d 190, 195 (D. Conn. 2003) (same). Here, a genuine fact issue exists as to whether the imminent-harm exception applies with respect to Defendants' conduct towards Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, he was clearly identified to Defendants; and Defendants were public officials who were aware that their conduct would likely result in imminent harm to Plaintiff. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claims of negligence and negligent infliction of emotional distress must be denied.

      e.    <u>Recklessness</u>

Defendants also contend that they are entitled to summary judgment on Plaintiff's common law claim of recklessness.

> One is guilty of reckless misconduct when knowing or having reason to know of facts which would lead a reasonable person to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him. Such recklessness is a state of consciousness with reference to the consequences of one's acts and is more than negligence, more than gross negligence. The state of mind amounting to recklessness may be inferred from conduct. Specifically, reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care and must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention.

*Zadrowski* , 2013 WL 5435491, at *9 (internal quotation marks, citations, and alterations omitted).

Defendants' argument for judgment as a matter of law on Plaintiff's recklessness claim is based on the theory that the Defendants' actions and conduct were "constitutionally permissible." Doc. 51-1 at 31. As the Court has already found that there are genuine issues of fact as to the reasonableness of the officers' use of force and failure to intervene, the determination of whether such conduct was reckless is a question best determined by the jury. Accordingly, Defendants' motion for summary judgment as to the claim of recklessness will be denied.

**B.**    **City of Hartford's Motion for Summary Judgment [Doc. 50]**

    **1.**    ***Monell* Liability**

Defendant City of Hartford seeks summary judgment on Plaintiff's claim of municipal liability under section 1983. In support of its motion, the City advances two distinct arguments. First, it contends that without evidence that Plaintiff's constitutional rights were violated by a City employee, there can be no municipal liability. However, the Court has already concluded that there

are material issues of fact as to Plaintiff's excessive force and failure to intervene claims; accordingly, this argument is without merit.

Second, the City argues that summary judgment is appropriate, as Plaintiff has adduced no evidence of a municipal custom, policy, or practice that would establish liability on behalf of the City for any violation of Plaintiff's constitutional rights. The City contends that one incident is insufficient to establish municipal liability under section 1983 on either a failure to train or a failure to supervise theory, and that Plaintiff has not identified a policymaker that would be responsible for such conduct. In response, Plaintiff argues that a factual dispute surrounds the adequacy of the City's training and supervision of the Defendant Officers. In line with that argument, Plaintiff cites to cases which he contends show that a single instance of force could support an inference of deliberate indifference.

It is well established that under section 1983, municipalities cannot be held liable for their employees' torts on a theory of *respondeat superior. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). It is only "where the municipality *itself* causes the constitutional violation at issue. . . . [W]hen the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (quotation marks and citations omitted). Thus, to hold a municipality liable under section 1983, a plaintiff must establish that the deprivation of his rights under federal law was caused by a municipal policy, custom, or usage. *Monell*, 436 U.S. at 690-91; *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

> [I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability. On the other hand, such acts would justify liability of the municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted

a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses. A plaintiff alleging that she has been injured by the actions of a low-level municipal employee can establish municipal liability by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly. Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them. A municipal policymaking official's "deliberate indifference" to the unconstitutional actions, or risk of unconstitutional actions, of municipal employees can in certain circumstances satisfy the test for a municipal custom, policy, or usage that is actionable under Section 1983.

*Jones*, 691 F.3d at 81 (internal citations and footnote omitted).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* The failure of the municipality to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* (quotation marks and citation omitted).

The deliberate indifference standard "requires a showing that the official made a conscious choice, and was not merely negligent." *Id.* (collecting cases).

To establish deliberate indifference for a failure train or supervise claim, the plaintiff must show (1) that a policymaker knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.

*Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (quotation marks omitted) (quoting *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992)).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation marks and citation omitted). That requirement exists because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Further, at the summary judgment stage, "a plaintiff must establish . . . that defendant breached its duty to act by failing to make meaningful efforts to address the risk of harm to plaintiffs," by, for example, "providing evidence that [a] training program was actually inadequate," or by showing evidence of "repeated complaints . . . followed by no meaningful attempt to investigate or forestall incidents." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citations omitted).

Here, Plaintiff alleges that the City is liable because it failed to supervise and failed to train its employees. Plaintiff argues that the single incident that caused Plaintiff's injuries was "unusually brutal or egregious" such as to establish deliberate indifference, and the very fact that the incident occurred is evidence that the officers' training and supervision was deficient. *See* Doc. 58 at 5.[4]

---

[4] "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). However, courts have noted that in limited circumstances, a single act may be sufficient to permit an inference of a municipality's deliberate indifference, for *Monell* purposes. In *Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir. 1980), the Second Circuit stated that

> absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force. However, a single, unusually brutal or egregious beating administered by a group of

Plaintiff points to the Officer Defendants' prior police training, and contends that such a program was meant to prepare officers to deal with situations such as the one at hand, "[y]et, despite their additional training, these officers, with no justification," assaulted Plaintiff. Doc. 68 at 5.

In making this argument, Plaintiff, relying in large part on *Amnesty Am.v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), conflates his claims of inadequate supervision and failure to train. However, the Second Circuit in *Amnesty America* made clear that these are two distinct theories of deliberate indifference, which "emphasize different facts and require different showings," and thus they "must be analyzed independently, rather than evaluated collectively." *Amnesty Am.*, 361 F.3d at 127 (footnote omitted). The *Amnesty America* opinion notes,

> While a failure to supervise claim requires allegations as to the violation itself and policymakers' reaction to it, a failure to train claim also requires evidence as to the city's training program and the way in which that program contributed to the violation. Moreover, in the context of a failure to supervise case, deliberate indifference may be established by showing that policymaking officials deliberately ignored an obvious need for supervision. In the failure to train context, on the other hand, plaintiffs must establish that the officials consciously disregarded a risk of future violations of clearly established constitutional rights by badly trained employees.

*Amnesty Am*, 361 F.3d at 127 n.8 (citations omitted).

---

municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or "gross negligence" on the part of officials in charge.

*Turpin,* 619 F.2d 196, 202 (2d Cir. 1980) (citations omitted). Plaintiff relies on this discussion in *Turpin*, as referenced in *Amnesty America*, to argue that an inference of a deficient training program can be made. The Court does not need to reach this argument, as Plaintiff's *Monell* claim is unsupported for other reasons, as discussed *infra*. However, the Court does note that it does not believe that this incident would be characterized as the *unusually* brutal or *egregious* beating the *Turpin* court contemplated as a potential exception to the general rule. *See Schnauder v. Gibens*, 679 F. App'x 8, 10 (2d Cir. 2017) (noting that the *extreme* use of force might be sufficient to allow a factfinder to infer deliberate indifference by policymakers (emphasis added)).

Here, Plaintiff does not present any evidence – nor does he make any argument – that would support municipal liability under a failure to supervise claim. Instead, Plaintiff's opposition focuses on the theory that the City failed to properly train its officers. As Plaintiff has not met his burden of producing evidence to support his claim against the City on a failure to supervise theory, that claim cannot survive summary judgment.

Nor can Plaintiff prevail on a failure to train claim, as no evidence has been produced that would demonstrate that a deficiency in City's training program gave rise to his injuries. For a finding of municipal liability under a theory of inadequate training, Plaintiff must establish that "the deficiency in training actually caused" the ultimate injury. *City of Canton*, 489 U.S. at 391. *See also Amnesty Am.*, 361 F.3d at 129–30 ("[P]laintiffs must establish that the officer's shortcomings resulted from a faulty training program rather than from the negligent administration of a sound program or other unrelated circumstances." (quotation marks and citation omitted)). Without giving any indication of how the City's training program was deficient, and how that deficiency actually caused the constitutional deprivation, Plaintiff argues that the simple fact that this incident occurred is – on its own – evidence that the City's training was inadequate.

"*City of Canton* unequivocally requires . . . that the factfinder's inferences of inadequate training and causation be based on more than the mere fact that the misconduct occurred in the first place." *Amnesty Am.*, 361 F.3d at 130. Plaintiff must also do more than "prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton*, 489 U.S. at 391. Plaintiff cannot prevail on a failure-to-train theory without coming forward with evidence as to how the training program was deficient, and evidence as to how such a deficiency caused the Officer Defendants to

-24-

use unreasonable force. Plaintiff has not even attempted to make such a showing here. Indeed, Plaintiff contends that the officers actually received specialized training, but "*despite* their additional training," the incident occurred. This argument is not sufficient to support a finding of liability of the City under the standards of *Monell.*

In sum, Plaintiff cannot establish a "direct causal link between the municipal policy or custom, and the alleged constitutional violation." *City of Canton*, 489 U.S. at 385. As Plaintiff has failed to put forward evidence that would justify imposition of liability on the City under section 1983, the City of Hartford's motion for summary judgment on *Monell* liability will be granted.

**2.**     **State Law Claims against the City of Hartford**

      a.     <u>Conn. Gen. Stat. § 52-557n and Conn. Gen. Stat. § 7-465</u>

Plaintiff alleges that the City is liable for the officers' actions, pursuant to Conn. Gen. Stat. § 52-557n, and seeks indemnification under Conn. Gen. Stat. § 7-465. The City seeks summary judgment on these claims on the basis that it is immune from liability under state law, pursuant to Conn. Gen. Stat. § 52-557n; that Plaintiff's failure to plead an exception to the doctrine of governmental immunity is fatal to Plaintiff's claims against the City; and that it does not have a duty to indemnify the Officer Defendants for willful acts under Conn. Gen. Stat. § 7-465.

Conn. Gen. Stat. § 52-577n(a)(1)(A) "imposes vicarious liability on municipal employers for the negligent acts of their employees." *McKinney v. City of Middletown*, 712 F. App'x 97, 98 (2d Cir. 2018). Although the City contends that it is entitled to immunity, a genuine issue of fact exists as to whether the imminent harm exception applies here, as discussed *supra*. Accordingly, Plaintiff's negligence-based claims against the Officer Defendants survive, as does Plaintiff's claim for municipal liability, under section 52-557n. The City's argument regarding Plaintiff's pleading

deficiencies does not require a different result. *See Calhoun v. Murtha*, No. 3:15-CV-1358(WWE), 2018 WL 460973, at *2 (D. Conn. Jan. 17, 2018) (rejecting the City's identical argument, noting that while Connecticut state practice rules may impose such a pleading requirement on a plaintiff, the Federal Rules of Civil Procedure, applicable here, do not contain special pleading requirements for immunity-related claims).

The City also seeks summary judgment on the claim for indemnification, pursuant to Conn. Gen. Stat. § 7-465.[5] This section "allows a plaintiff to seek indemnity from a municipality based upon the actions of a municipal employee within the scope of his municipal employment." *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 190 (D. Conn. 2003).

The City argues that where the alleged conduct that forms the basis for Plaintiff's claims is willful and intentional, Plaintiff's negligence claims, based on the same conduct, must fail. Under the City's proffered approach, summary judgment should be granted on Plaintiff's negligence claims, leaving the City with no duty to indemnify under section 7-465.

I do not find such reasoning persuasive. Plaintiff may pursue claims sounding in both negligence and intentional torts at the same time, and in the alternative. *See* Fed. R. Civ. P. 8(d) (allowing pleading in the alternative and the pleading of "separate claims . . . , regardless of consistency"). While it is true that some courts in this District have not permitted such claims to go

_____

[5] Conn. Gen. Stat. § 7-465 states, in relevant part, that the City
shall pay on behalf of any employee . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty.

forward simultaneously, *see, e.g.*, *Edwards v. City of Hartford*, No. 3:13-CV-878(WWE), 2015 WL 7458501, at *4 (D. Conn. Nov. 23, 2015), others have recently examined and overwhelmingly rejected the premise upon which the City here relies. *See, e.g.*, *Alvia v. City of Waterbury*, No. 3:15-CV-1162(RNC), 2018 WL 1587459, at *7 (D. Conn. Mar. 31, 2018) (allowing negligence and intent-based claims regarding the same conduct to proceed simultaneously to trial); *Gomez v. City of Norwalk*, No. 3:15-CV-1434(MPS), 2018 WL 780213, at *8 (D. Conn. Feb. 8, 2018) (same); *Olschafskie v. Town of Enfield*, No. 3:15-CV-67(MPS), 2017 WL 4286374, at *8 (D. Conn. Sept. 27, 2017) (same); *Conroy v. Caron*, 275 F. Supp. 3d 328, 355 (D. Conn. 2017) (same); *Marsh v. Town of E. Hartford*, No. 3:16-CV-928(SRU), 2017 WL 3038305, at *7 (D. Conn. July 18, 2017) (same); *Jackson on Behalf of Z.J. v. City of Middletown*, No. 3:11-CV-00725(JAM), 2017 WL 2218304, at *7 (D. Conn. May 19, 2017) (same); *Bussolari v. City of Hartford*, No. 3:14-CV-00149(JAM), 2016 WL 4272419, at *3 (D. Conn. Aug. 12, 2016) (same).

In *Bussolari*, Judge Meyer considered and rejected the same argument that the City advances here. I will quote Judge Meyer's opinion at length:

> It is well established that a plaintiff may plead alternative theories of liability. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). The Second Circuit allows a party to proceed at summary judgment with inconsistency in claims, either in the statement of the facts or in the legal theories adopted. And it is similarly well established that a party may properly submit a case to a jury on alternative theories.
>
> In light of this background, I see no reason why a plaintiff may not pursue claims against police misconduct by means of both intentional and negligent theories of liability.
>
> It is true that some other judges in the District of Connecticut have dismissed claims of negligence at summary judgment that have been brought alongside § 1983 claims alleging excessive force.

Those decisions . . . that have disallowed simultaneous intentional/negligent tort claims in this context have not elaborated on their reasoning other than to cite the fact of prior court rulings. They rely in part on cases applying New York law that appears to be different from Connecticut law. The case that is most often cited by Connecticut federal courts for the proposition that § 1983 and negligence claims are incompatible is based on an interpretation of New York law that finds no cause of action for negligence on the part of a police officer when making an arrest.

By contrast, it appears that Connecticut law allows for claims of negligence against police officers, including for negligent arrest and use of force. . . . Ultimately, I do not need to decide whether there is a distinction between the common law of New York and Connecticut. In view that defendants' argument here is simply that the negligence claims must fail because of their inconsistency with the intentional tort claims (rather than a claim that Connecticut law does not allow for negligence claims at all in the excessive force context), my principal concern is the baseline rule that a plaintiff is generally permitted to plead and prove his or her case on alternative and sometimes inconsistent theories of liability. I do not see why a special exception to this general rule should or must exist for claims of intentional and negligent police misconduct in the excessive force context.

*Bussolari*, 2016 WL 4272419, at *3–4 (quotation marks, citations and footnotes omitted). Judge

Meyer held that

genuine fact issues remain to allow a jury to consider whether the defendant officers are liable for intentional torts or negligent torts. Furthermore, the record before me suggests that there are genuine issues of material fact that are properly left to a jury regarding how defendants—and plaintiff—acted during the arrest. It is best left upon a full trial record for a properly instructed jury to decide if plaintiff has established the elements of any of his claims, and if so, whether the facts presented suffice for a claim of a constitutional tort of excessive force . . . and/or some form of intentional or negligent tort under common law (provided, of course, that plaintiff may not obtain double recovery under alternative theories that are based on the same conduct and harm).

*Id.* at *4 (citation omitted).

The situation presented in the instant matter is identical to that in *Bussolari*. I agree with my colleague's reasoning and conclusion, and find that Plaintiff's negligence-based claims may exist concurrently with his intent-based claims. Should a jury find the Officer Defendants liable for

negligence based conduct, the City may ultimately be responsible for indemnification. Accordingly, the City's motion for summary judgment on this basis will be denied.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Defendants Fancher, Corvino, and Reeder's Motion for Summary Judgment, Doc. 51, is **GRANTED IN PART and DENIED IN PART**; and Defendant City of Hartford and Rovella's Motion for Summary Judgment, Doc. 50, is **GRANTED IN PART AND DENIED IN PART.** Specifically, summary judgment is granted on Plaintiff's claim of false arrest; on Plaintiff's claim of excessive force under section 1983 against Defendant Reeder; on Plaintiff's claim of assault and battery against Defendant Reeder; on Plaintiff's claims against Defendant Rovella; on Plaintiff's claim for municipal liability under section 1983 against the City of Hartford; and on Plaintiff's claim for punitive damages against the City of Hartford. The parties are directed to file a joint trial memorandum in the form required by this Court's Standing Order Regarding Trial Memoranda in Civil Cases on or before **July 9, 2018.**

It is SO ORDERED.

Dated: New Haven, Connecticut

May 24, 2018

 */s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge